BURKE E. BODWELL, APPELLANT, v. JOHN R. WEBSTER ET AL., APPELLEES.

FILED SEPTEMBER 20, 1915. No. 18203.

1. **Master and Servant:** "INDEPENDENT CONTRACTOR." An "independent contractor" is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of the work.

2. ———: RELATION. While the existence or the absence of the right of the employer to control the work is a usual test to determine whether the workman is a servant or an independent contractor, the right of the employer to discharge him, the absence of an independent occupation, and the mode of compensating him and his subordinates, may be factors indicating the true relation.

3. ———: INJURY TO EMPLOYEE: LIABILITY. The mere fact of the nominal employment of a workman as an independent contractor will not relieve the master of liability for his torts, where he is in fact employed as a servant.

4. ———: "INDEPENDENT CONTRACTOR:" QUESTION FOR JURY. Where the relation between the owner of a building and a workman engaged to repair it is not evidenced wholly by a written instrument, but is affected by extrinsic facts and circumstances, from which different deductions may reasonably be drawn, whether the workman was an independent contractor is a question for the jury.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed.*

*Raymond M. Crossman* and *W. C. Fraser,* for appellant.

*Greene, Breckenridge, Gurley & Woodrough,* contra.

ROSE, J.

Plaintiff brought this action to recover $3,000 for personal injuries alleged to have been sustained by him while assisting in the repair of an elevator in the Webster-Sunderland building in Omaha. Defendants Webster and Sunderland are the owners. It was alleged in the petition that defendant Samuel K. Hanford was superintendent and foreman in and about the building and as such had charge of repairs; that plaintiff was employed to assist in replacing a tiller cable in the elevator, it being necessary for him to go down into the elevator pit to loosen one end of the cable; that the injury to plaintiff was caused by the negligence of Hanford in failing to warn him of the dangers incident to the work; that plaintiff was an inexperienced workman and not aware of the dangers; that Hanford negligently pulled the tiller cable while plaintiff was in the elevator pit and caused the elevator to descend upon him, causing injuries to his ankle, leg and back. In

their answer defendants Webster and Sunderland alleged
that Hanford was an independent contractor, for whose
torts they were not responsible. At the close of plaintiff's
testimony, they moved for a directed verdict in their favor,
urging, among other grounds, that the defense mentioned
was conclusively established. The motion was sustained.
The trial proceeded against Hanford alone, and the jury
rendered a verdict against him for $700. From the order
dismissing the action as to Webster and Sunderland, plain-
tiff has appealed.

Was Hanford an independent contractor? The letter
appointing him to his position says: "You are hereby ap-
pointed superintendent of the office portion of the Webster-
Sunderland building. We desire you to take charge of the
employees, viz., the fireman, operator of the elevator, and
janitor; also, desire you to take charge of any repairs or
improvements required in the office portion of the build-
ing.

"Regarding repairs and improvements: Any small ex-
penditures that will only require a few dollars we will
leave to your judgment, but anything calling for an ex-
penditure of say $10 or more, we would like to have you
refer to us before incurring the expense.

"It is our desire that the office part of the building shall
be kept up in good shape, that the halls shall be kept neat
and clean, that no disorder shall be permitted, that the
employees shall attend faithfully to their duties, and in
general that the building shall be kept in as attractive
condition as possible and entirely satisfactory to the ten-
ants.    *    *    *

"Regarding your compensation: I told you that we were
paying 5 per cent. on the cost of all this matter. I find
that I am in error, that George & Co. have not been charg-
ing us 5 per cent. on the salaries of the employees or for
sundry items for janitors' supplies. They just charged us
5 per cent. on the repairs. I, therefore, suggest, as a fair
compensation to you, that we pay you as follows: For
the work you have been heretofore doing, looking after the
elevator, electric lights, etc., $10 per month. Supervision

of employees and repairs and improvements, 5 per cent. commission."

Hanford testified that he was an electrical contractor, having his office in the Webster-Sunderland building. After the receipt of the foregoing letter, November 4, 1910, he entered upon the discharge of his duties. He superintended the work of the foreman of the building, directing the elevator operator, the janitor, and the engineer. Such employees were hired and dischargd by him. In some instances he paid them twice a month by his personal check, afterward sending his bill to Webster and Sunderland, with 5 per cent. added for commission; and at other times he sent them statements for salaries and repairs, and afterward paid the claimants with funds received from his employers. According to his own testimony, he did not consider that they were working for him, but were servants of Webster and Sunderland, though he had charge of them and directed their work. If their services were not to be compensated by the owners of the building, he would not have considered it his obligation to pay them. Work of repairing the elevator was within the scope of Hanford's business as an electrical contractor. He could do the work himself or employ another electrician. In either case he would add 5 per cent. to the regular cost of the work for his commission. Plaintiff was an apprentice, and had been employed by Hanford in his electrical business for about nine months before the accident. He had also repaired the building in minor respects. He had been told by Hanford to look after the elevator and repair it, if necessary, when Hanford was not there. For work of this kind time slips were made out to the owners. Record of this work was kept separately from that done for Hanford. The cost of installing the cable on the day of plaintiff's injury was $12.50, which included Hanford's commission on the materials and labor used. This work was done without consultation with the owners. Hanford also testified that the owners had not directed the employment or discharge of servants.

An "independent contractor" has been defined to be "One who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of the work." 2 Words & Phrases (2d ed.) 1035. It is said that the existence or the absence of the right to control the work is the usual test of the relation, though the actual exercise of control is not essential. Cases in note to *City of Richmond v. Sitterding,* 101 Va. 354, 65 L. R. A. 445, at page 453. There are, however, other factors which may indicate the true relation. An owner's right to abandon or suspend work or to discharge the workman at pleasure may indicate dependency. *Cochran v. Rice,* 26 S. Dak. 393, Am. Ann. Cas. 1913B, 570, and note. Text-writers say: "If he never serves more than one person, there is usually a presumption that he has no independent occupation; but this presumption is not conclusive." Shearman and Redfield, Negligence (6th ed.) sec. 164. "Whether he works as contractor or as servant is a question of mingled law and fact, which it is scarcely possible to decide by any fixed rule which will accurately govern those cases where the one occupation borders closely upon the other." Shearman and Redfield, Negligence (6th ed.) sec. 165.

In *Brackett v. Lubke,* 4 Allen (Mass.) 138, Bigelow, C. J., said:

"The distinction on which all the cases turn is this: If the person employed to do the work carries on an independent employment, and acts in pursuance of a contract with his employer by which he has agreed to do the work on certain specified terms, in a particular manner and for a stipulated price, then the employer is not liable. The relation of master and servant does not subsist between the parties, but only that of contractor and contractee. The power of directing and controlling the work is parted with by the employer, and given to the contractor. But on the other hand, if work is done under a general employment, and is to be performed for a reasonable compensation or for a stipulated price, the employer remains liable, because

he retains the right and power of directing and controlling the time and manner of executing the work, or of refraining from doing it, if he deems it necessary or expedient."

One of the elements of the definition is an independent business or occupation, as distinguished from the dependent character of the service of an employee. Failure of the employer to select personally the employees or to direct the manner of performing the services does not necessarily indicate that the superintendent is an independent contractor. It was said in *Knicely v. West Virginia M. R. Co.*, 64 W. Va. 278, 17 L. R. A. n. s. 370:

"Nor is the manner in which the compensation is to be determined conclusive. If payment is made 'by the job' it is evidence of an independent contract, but only a circumstance. * * * How many conceivable instances of employment in which compensation is determined by the amount of work done instead of by the time employed, are there? Hundreds of thousands of 'piece workers' in factories, coal miners, paid by the bushel, railway engineers, paid according to mileage, and thousands of others. If that made an employee an independent contractor, it would be possible for employers to farm out all their work and with it their liability, by a very simple operation. Nor is it more than a mere circumstance, having more or less probative force, that the general employer has not, or has delegated, the power to hire and discharge the men."

It is the actual relation, and not the form, that controls. It was said in *Dibert v. Giebisch,* 144 Pac. (Or.) 1184: "The law with respect to the negligence of an independent contractor is formed upon the principle that one person should not be compelled to answer for the fault or neglect of another over whom he has no control. In actions to recover damages for injuries caused by the alleged negligence of the master, where the defense is that the carelessness was that of an independent contractor, a court will not hesitate carefully to scrutinize the substance of the contract and all the attending circumstances in order to determine the actual relation which the alleged master sustained to the person employed. The mere fact

of nominal employment by an independent contractor will not relieve the master of liability where the servant is in fact in his employ. *Nelson v. American Cement Plaster Co.,* 84 Kan. 797."

As supervisor of employees of the building and of the making of repairs, it cannot be said, as a matter of law, that Hanford was an independent contractor. His own testimony shows that, while he paid the employees, he did so only nominally; that, in fact, he hired and discharged them, but only as would any employee having such authority. It may be inferred that his relation with the owners of the building could be terminated at their pleasure. In looking after the elevator and electric lights, as shown by his letter of appointment, Hanford was merely continuing his previous service, for which he was paid $10 a month. As supervisor it may be said that he was not acting "in the pursuit of an independent business." The relation existing between defendants and Hanford is not evidenced wholly by the written instrument. It is affected by extrinsic facts and circumstances from which different deductions may reasonably be drawn. Under these conditions, whether Hanford was an independent contractor was a question for the jury. Cases cited in note to *City of Richmond v. Sitterding,* 101 Va. 354, 65 L. R. A. 445, at page 508.

In this view of the law and the evidence, the peremptory instruction was erroneous. The judgment of the trial court is therefore reversed and the cause remanded for further proceedings.

REVERSED.

HAMER, J., not sitting.