[S. F. No. 7645.   In Bank.—September 22, 1916.]

PATRICK CONNOLLY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

Industrial Accident Commission — Proceeding for Compensation — Status as Employee cannot be Shown by Hearsay Testimony.— In a proceeding before the Industrial Accident Commission to recover compensation for the accidental death of an alleged employee, the status of the deceased as an employee of the person for whom he was doing work at the time of the accident cannot be shown by hearsay testimony.

Id. — Jurisdictional Fact — Burden of Proving on Claimant. — The existence of the relation of employer and employee at the time of the accident is essential to the jurisdiction of the commission to

render an award, and the burden of proving such jurisdictional fact is on the claimant.

ID. — INSUFFICIENT EVIDENCE OF STATUS — CARPENTER WORKING ON RANCH.—The evidence in this proceeding is held insufficient to show that the relation of employee and employer existed between a carpenter doing work on a ranch and the owner of the property.

ID. — LUMBER FURNISHED BY OWNER — DIRECTION AS TO WORK. — The facts that the owner of the ranch furnished the lumber for doing the work, and once gave a direction with reference to the manner of constructing a shed, do not show such relation.

ID.—FORMER EMPLOYMENT BY DAY—PRESUMPTION OF CONTINUANCE OF STATUS.—The former employment of the carpenter at other places and other times by the day raises no presumption that when he subsequently went to work at the ranch he was similarly hired.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

St. Sure, Rose & Callaghan, for Petitioner.

Christopher M. Bradley, for Respondents.

Harry F. Davis, for Claimant.

MELVIN, J.—*Certiorari* to review the action of the Industrial Accident Commission in awarding to Louise Connolly compensation for the death of her husband, Edward H. Connolly.

The deceased was very remotely, if at all, related to Patrick Connolly. Edward H. Connolly was doing work as a carpenter on the ranch of said Patrick Connolly when he stepped on a nail and injured his foot. As a result he died of lockjaw. The findings of the Industrial Accident Commission were to the effect that Edward H. Connolly died as the result of an injury which arose out of and happened in the course of his employment; and that at the time of the accident both Edward and Patrick Connolly were subject, as employee and employer respectively, to the provisions of the Workmen's Compensation, Insurance and Safety Act.

Petitioner makes the point that all of the competent evidence is to the effect that Edward H. Connolly was an inde-

pendent contractor, and that petitioner was therefore not liable for his injury and death. (*Carstens* v. *Pillsbury*, 172 Cal. 572, [158 Pac. 218]; *Western Indemnity Co.* v. *State Industrial Accident Commission,* 172 Cal. 766, [158 Pac. 1033].) Patrick Connolly testified that Edward H. Connolly "took a job to move a granary and put up a wagon shed and do the porch on the house and a few other things"; that he agreed to do all of this for $42 and to furnish his own board. This testimony was corroborated by that of Patrick J. Connolly, a son of petitioner, who recited the terms of the alleged verbal contract in substantial agreement with the testimony of his father. Mrs. Moy testified to statements made by Edward H. Connolly that he was working on "a contract job," that he was his "own boss," and that he would have to pay board for himself and his helper. A man named Lee was hired to assist Edward Connolly on the work, but left the employment before the structures were completed. The latter borrowed money to pay Lee from John Sweeny, and according to the testimony of Sweeny a statement was made by Edward Connolly at that time that he wanted the money "to pay a man off that he hired to do this job." Dan Moy told of a conversation with Edward Connolly in which the latter said he had a contract to do the work for an agreed price of either $42 or $42.50. Witness could not remember which sum was named.

Opposed to this testimony was that of Mrs. Louise Connolly, who said that her husband had told her of figuring on a contract with Patrick Connolly, but failing to make the latter understand and accept his figures, of agreeing to work by the day. Lee, who had been selected by Edward Connolly as his helper, also testified that said Connolly had told him of an unsuccessful attempt to get a contract from Patrick Connolly, and his final arrangement to work by the day. Lee also said that Edward Connolly had told him, when hiring him, that he, Lee, was to work for Patrick Connolly, and he was corroborated in this statement by another witness named Madsen. There was also some testimony tending to impeach Mrs. Moy's statements, but it is true, as petitioner contends, that all of the testimony offered by Mrs. Connolly before the Industrial Accident Commission relating to the terms upon which her husband went to work for Patrick Connolly was hearsay.

In the opinion of the Industrial Accident Commission the following comment is made regarding the evidence:

"The evidence in this case is conflicting and difficult.   A considerable portion of that admitted into the record on behalf of applicant was hearsay and not in relation to the happening of the injury.   Some of the evidence on the part of the defendant was direct but self-serving and questionable. For these reasons the commission is turned back upon inferences to be drawn from collateral facts and some direct evidence, not from the parties in interest."   The learned commissioners then concluded that there was no contract because the work was "indefinite in quantity and not readily subject to specific contract," and not of such nature as to "warrant a contractor undertaking it for a lump sum"; yet the petitioner before the commission had herself testified that her husband had endeavored to get a contract for the work.

Another ground for the determination of the commissioners was that the work was so extensive that it would not pay a contractor for performing it at $42.50.   There is no force in this reason, as it is a matter of common knowledge that contractors are frequently disappointed in the financial return from work done for a stipulated sum.

It was found that Edward H. Connolly had been paid before his death $45, a sum greater than the alleged contract price, but admittedly ten dollars of this amount was paid by the wife of Patrick Connolly after the accident, and she swore that she gave it to Mrs. Louise Connolly to enable the latter to take her injured husband to the hospital and not as a payment for work done.   Of the evidence regarding the payment of $45 we may say that if there had been any competent testimony that Edward H. Connolly was working by the day, the proof of the payment of so large a sum would have had some corroborative force, but we are here confronted with a condition involving a total lack of competent evidence regarding the status of the claimant's decedent. His status as an employee is sought to be proven by hearsay testimony which may not be considered.   (*Englebretson* v. *Industrial Accident Commission,* 170 Cal. 793, [151 Pac. 421]; *Employers Assurance Corporation* v. *Industrial Accident Commission,* 170 Cal. 800, [151 Pac. 423].)

Attention is also called to the circumstance that Patrick Connolly gave directions to Lee with special reference to the

construction of the implement shed—such directions (to quote from the opinion) "as one could properly give to an employee but not such as could be given to a contractor who had undertaken to perform a specified task for a specified sum of money." Examining Lee's testimony we find that he said he never saw Patrick Connolly but once. He was asked if Patrick Connolly ever gave him any instructions. He replied:

"Not a great deal, only a little about the overhang. He said he would like to have it eight feet if he could, but that would make the front too low to drive in, so he said, 'Do the best you can.' Six feet was all I could get the overhang to come right, and he said that would do." We fail to see how this one incident proves that Edward Connolly was not an independent contractor, particularly in view of the fact that the lumber was furnished by Patrick Connolly. It does not appear that the "overhang" which Mr. Connolly wanted on the implement house involved more labor on the part of the carpenters than a shorter one. Nor is there any force in the suggestion that because the owner of the real property was to furnish the lumber, there was probably no contract except that for labor by the day. Contracts are often made for sufficient labor to accomplish specific results with materials furnished by the person on whose property those results are to be produced.

Finally, it is argued by learned counsel for the Industrial Accident Commission that a presumption of law (disputable but not successfully overcome) fixes the status of Edward Connolly as that of a day laborer, because both Patrick Connolly and his son testified that Edward H. Connolly had worked "on and off" for Patrick Connolly as a day laborer for more than a year prior to the time when he went to work on the ranch where the accident occurred, and that he was employed at a daily wage during the week immediately preceding the one in which he went to work on the ranch. It is insisted that under the authority of subdivision 32 of section 1963 of the Code of Civil Procedure and such decisions as *Kidder* v. *Stevens,* 60 Cal. 414, *Eltzroth* v. *Ryan,* 89 Cal. 135, [26 Pac. 647], and *Metteer* v. *Smith,* 156 Cal. 572, [105 Pac. 735], the status thus proved to exist continues until overturned by proof of a different arrangement. But a proven status is only presumed to exist "as long as is usual

with things of that nature,'' and employment by the day, in the nature of things, may be presumed to exist only so many days as the services of the workman are desired by his employer. The former employment of Edward Connolly by Patrick Connolly at other places and other times by the day raises no presumption that when he went to work at the ranch he was similarly hired. Moreover, the testimony regarding the admissions against interest made by Edward Connolly all shows that at least he had attempted to secure an independent contract for the work upon which he was employed when he met with the accident which caused his death.

It will be seen from the foregoing that the jurisdiction of the Industrial Accident Commission to hear and determine the claim of Louise Connolly was not established. The burden rested upon her to prove the jurisdictional facts as well as the circumstances of her husband's death. (*Western Grain and Sugar Products Co.* v. *Pillsbury, ante,* p. 135, [159 Pac. 423] ; *Rideout* v. *Pillsbury, ante,* p. 132, [159 Pac. 435].) This she sought to do by hearsay evidence which was then inadmissible and which, although admitted, was not considered by the Industrial Accident Commission, and by proof of certain negative circumstances which, standing by themselves or taken together, were by no means sufficient to fix the asserted relations between Patrick and Edward Connolly. The award was, therefore, erroneously made.

Petitioner also contends that Edward Connolly was not under the provisions and protection of the statute, even if he were an employee, because the very nature of the work upon which he was engaged at the time of the accident would, in that case, make him one whose employment was both "*casual* and *not* in the usual course of the business of his employer,'' who was a farmer. There is much force in this contention (see *Maryland Casualty Co.* v. *Pillsbury,* 172 Cal. 748, [158 Pac. 1031]), but in view of the conclusion which we have reached on the other branch of the case we need not enter into an extended discussion of this point.

The award is annulled.

Shaw, J., Lorigan, J., and Henshaw, J., concurred.