E. E. SPURLING, Appellee, v. INCORPORATED TOWN OF STRATFORD et al., Appellants.

**MUNICIPAL CORPORATIONS:** Defects in Streets—Constructive No-
1 tice. Testimony reviewed, and held ample to sustain a finding that a town had constructive notice of an excavation in the one business street of the town.

**MUNICIPAL CORPORATIONS:** Defects in Streets—Day Laborer (?)
2 or Independent Contractor (?) A day laborer who is engaged in digging for a property owner an excavation in a public street is not liable for damages consequent upon leaving the excavation unguarded.

**MUNICIPAL CORPORATIONS:** Torts—Independent Contractor (?)
3 or "Employee" (?) Principle reaffirmed that a laborer may not be held to be an independent contractor unless there is present the element of doing the work *"according to his own method."*

**APPEAL AND ERROR:** Reversal—Controversy Between Codefendants.
4 Plaintiff's judgment against a town for damages consequent upon an excavation in the street will not be reversed because of a con-

troversy between the town and its codefendants wherein the town's cross-petition against its codefendants for a reimbursing judgment was dismissed without prejudice.

**MUNICIPAL CORPORATIONS:** Defects in Streets—Occurrences Subsequent to Injury. Evidence that people fell into an excavation in a street *after* the occurrence of the injury in question is not admissible to show either (1) negligence on the part of the city or (2) notice to the city; but it is not prejudicially erroneous to incidentally receive such evidence *for the purpose of showing how and in what manner the existence of the excavation was impressed upon the mind of the witness.*

*Appeal from Hamilton District Court.*—H. E. Fry, Judge.

## January 20, 1923.

## Rehearing Denied May 12, 1923.

The plaintiff fell into a ditch in one of the streets of defendant town. The ditch was in front of the property of defendant Cannon. Defendant Franksain was employed by Cannon to dig the ditch, the purpose of which was a connection with the sewer. Plaintiff sues all three defendants, charging that they negligently failed to barricade the ditch or to warn the public by lights. There is a sharp conflict in the testimony as to the time of the accident, and whether it was or was not after dark. Plaintiff claims that it was about 9:30 o'clock in the evening, and defendants, that it was about an hour earlier, and that it was not yet dark. Trial to a jury, and verdict and judgment for plaintiff for $1,550. Defendants appeal.—*Affirmed in part; reversed in part.*

*F. J. Lund, Burnstedt & Hemingway,* and *Martin & Alexander,* for appellants.

*I. J. Sayrs* and *O. J. Henderson,* for appellee.

Preston, C. J.—There is a conflict in the evidence at some points. The evidence tends to show, and the jury could have found therefrom, that, on July 12, 1919, defendant Cannon owned a lot on the east side of Shakespeare Street, in defendant town. It is the main business street of the town, and Cannon's

lot was about the center of the business part of town, which consisted of one block. The street was to be paved. The defendant Cannon arranged with defendant Franksain to dig a trench from the curb to the center of the street. It was not the agreement between Cannon and Franksain that the work was to be done by the job; it was done by the day, and at 50 cents an hour. The work was commenced about 1 o'clock of that day, and by 6 o'clock in the evening, the trench had been excavated about 24 feet from the curb. It was about 2 feet wide, and was 3 feet deep at one end, and 5 at the other. It was unfinished. A Saturday night crowd was expected in town. When Franksain quit work, about 6 o'clock, he left the trench open, without any barricade, light, or warning. That was known by Cannon, who was there about 3 o'clock in the afternoon, and again after supper. The mayor was engaged in business across the street, and about 50 feet distant from the ditch; the members of the council, except one, had their places of business on this street, and within less than a block of the ditch; and two members of the council had passed by the ditch, and knew of its existence during the afternoon and evening,—knew the conditions. The street commissioner passed the ditch at different times during the day, and walked past it after supper, an hour or two before the accident. Immediately after the accident, a red light was placed at the ditch. Halstrom, one of the defendants' witnesses, and a councilman, says that the red light was put out on the ditch when it got dark enough to put it on; that there was no difficulty about seeing the ditch or the banks without the aid of lights; and that he saw it himself. As said, there is a sharp conflict in the evidence as to the time when the accident occurred, and the degree of darkness. The jury could, of course, have believed plaintiff's witnesses. The jury could have found from the evidence that the street lights had not been turned on, though defendants' evidence is to the effect that the lights were burning, and that it was light enough so that plaintiff could have seen the excavation and the dirt at the sides. The street commissioner, who was also town marshal, and had charge of turning on the lights, says that they were not turned on until after the accident. The excavation was in front of a vacant lot, and appellee contends that any light from the stores

was obstructed by the cars parked along that side of the street.
Evidence was admitted of the fact that two other men fell into
the ditch the same evening.  It is not clear from the evidence
whether this was before or after plaintiff was hurt; but it was
about the same time.  One of the two witnesses testifies that
he fell in about 9 o'clock, which would be before the accident
to plaintiff, if, as plaintiff contends, he fell in at about 9 :30.
The gutter and curb had been put in, and extended 3 or 4 feet
from the sidewalk, which was 10 feet wide.  The gutter was not
disturbed by the excavation.  There is evidence tending to show
that, when plaintiff was out in the street, he turned back and
looked at the clouds, because of the storm which was coming up.
It was cloudy, and a storm was threatening.  Plaintiff was a
farmer, living 3 or 4 miles from the town.  Some time after 8
o'clock, as he claims, plaintiff came to town with his family,
in a car driven by another member of the family.  They en-
tered this street north of the excavation, and drove down the
street, where the car was parked, and plaintiff crossed the street
to a store on the west side.  He was riding on the right side of
the car, and was not aware of the existence of the ditch until
the happening of the accident.  He entered the store, later at-
tended a public meeting on the west side of the street, after
which he crossed to the east side to another place, where he
remained for a short time; and at about 9 :30 o'clock, as he
claims, he came out of the place, and discovered that a storm
was coming up, and undertook to find his car in the darkness.
He proceeded south along the curb line immediately in front
of the cars parked on the east side of the street.  Due to the
darkness, as he claims, it was necessary for him to walk near
the front end of the cars, to identify his, and as he proceeded,
he was precipitated into the east end of the excavation.  A pass-
er-by was attracted by groans, and discovered plaintiff in the
ditch.  Defendants' evidence tends to show that plaintiff was
crossing the street when he fell into the ditch.  The tendency of
plaintiff's evidence is that, when he fell in, he became uncon-
scious, and did not regain consciousness until after he was taken
home that night.  Several of plaintiff's ribs were broken, and
he was incapacitated from attending to his business for a con-
siderable time.  This, in brief, is the story of the transaction.

The weight of the evidence and the credibility of the witnesses were for the jury, and their finding settles a number of questions argued.

Separate appeals have been taken by each of the three defendants, and three separate arguments have been filed. The errors assigned and the brief points, with numerous subdivisions, number a hundred or more. Some of these are repetition, some are without merit, some are technical, some do not comply with the rules, and others are not argued. The gist of all of them may be summed up in the following propositions, which seem to be controlling.

1. It is unnecessary to take any space to discuss the question of negligence of the defendants. Clearly, it was a question for the jury.

2. Likewise, the question of plaintiff's alleged contributory negligence was for the jury. A finding by the jury either way would have sufficient support. The court could not say, from the record, that plaintiff, as a matter of law, was guilty of contributory negligence.

3. The evidence is ample, under all the circumstances, to show constructive notice to the town, and in time to have remedied the defect by erecting barriers or a light, or both. Indeed, the jury could have found that the town had actual notice. Defendant Franksain did the work, and knew the conditions, and knew that he left the ditch unprotected. The principal, Cannon, likewise is shown to have known of the situation.

**1. MUNICIPAL CORPORATIONS: defects in streets: constructive notice.**

4. Appellants contend that there is no joint liability, and that the suit may not be so maintained against them. The question was raised by motion, demurrer, plea, motion to direct, requested instructions, and exceptions to the instructions given. The thought in the argument is that each defendant is responsible only for the damage done by him. A duty is enjoined upon the town to use ordinary care to keep its streets in a reasonably safe condition for travel, and this is so whether the dangerous condition is created by the town itself or by others. The other defendants could not lawfully dig, or cause to be dug, a pit that would be dangerous to the traveling public. In

**2. MUNICIPAL CORPORATIONS: defects in streets: day laborer (?) or independent contractor (?)**

digging the ditch, the defendants Cannon and Franksain impliedly agreed, as I think, to perform the act in such a manner as to save the public from danger and the municipality from liability. *City of Des Moines v. Des Moines Water Co.*, 188 Iowa 24, 36. In doing what they did, they were required to use ordinary care in this regard. The town permitted them to do what was done, or at least knew of the condition created by the other defendants. The damage sued for was for a single indivisible injury, to which all the defendants contributed, by failure to guard the excavation or to put up lights during the night,—at least, it was for the jury to say who, if any, of the defendants caused or contributed to the injury, and the jury were so instructed. It is not a case where the negligence of one caused a part of the injury, and that of another, by some other act or additional act, added to or enhanced the damages caused by the negligence of the first. The jury could have found from the evidence that the duty to in some way properly guard the ditch was incumbent on all the defendants. The jury did so find. The one act in the instant case was an act of omission on the part of all three defendants to properly guard the ditch. It is not the digging of the ditch, so much as the failure to guard it. What was done before culminated in producing a condition which caused the injury to plaintiff. It is sometimes called a nuisance, and sometimes negligence, or both. 26 Ruling Case Law 764; *Erickson v. Town of Manson*, 180 Iowa 378, 384. It is plain enough, without citation of authority, that two or more persons may be guilty of an assault and battery, and sued as such, even though one may have struck one blow, and another another blow, if they were acting together. True, this would be an act of commission. I am unable to see why plaintiff should be required to sue all the defendants separately, and thus increase the number of suits. True, he was not required to sue them all. It may be that it would have been better, and would have made less complication, to have sued the town alone. But having done as he did, he could recover from those of the defendants who contributed to the one injury and the entire damage. Plaintiff may not have known in advance just what he could prove on the trial as against the different defendants,— whether he could prove notice to the town, and so on. I think

the trial court did not err in this respect. See *Freeby v. Town of Sibley,* 183 Iowa 827, 832; *Young v. Gormley,* 119 Iowa 546; *Heisler v. Heisler,* 151 Iowa 503, 506; *Dunshee v. Standard Oil Co.,* 165 Iowa 625; *McCann v. Clark,* 166 Iowa 705, 714; *Frisbee v. Hawkeye Land Co.,* 170 Iowa 540; *Pugh v. Chesapeake & O. R. Co.,* 101 Ky. 77 (72 Am. St. Rep. 392); *Washington Gas Lt. Co. v. Lansden,* 172 U. S. 534, 552; 1 Cooley on Torts (3d Ed.) 133, 136, 246; and 2 Cooley on Torts (3d Ed.) 1319. The debatable question in the case is whether defendant Franksain, who was merely the employee of Cannon, is liable. The writer is of opinion that he is, and I have so expressed myself. See 20 A. L. R. 97, and note. The other justices are of opinion that there is no liability as to him. The case is, therefore, reversed as to him.

5. Defendant Cannon pleaded that Franksain was an independent contractor, and that he, Cannon, was not liable for Franksain's act, while Franksain pleaded that he was only the employee of Cannon, and was, therefore, not liable. The undisputed evidence shows, we think, that Franksain was not an independent contractor. When Cannon employed Franksain, the latter thought at first that he could not do the work Saturday, the 12th, and Cannon claims that he suggested that he had better not do it until Monday. Later, Franksain concluded to do the work Saturday, and Cannon saw the work being done, and assented thereto. There was nothing in the agreement, nor is there anything in the evidence, to the effect that Franksain was to do the work according to his own method, and not subject to the control of Cannon. *Bodwell v. Webster,* 98 Neb. 664 (154 N. W. 229); *Sylcord v. Horn,* 179 Iowa 936, 943; *Goodwin v. Mason & Seabury,* 173 Iowa 546, 550. Furthermore, as to the public, Cannon owed the duty of using proper care to see that the excavation was reasonably safe. *Frisbee v. Hawkeye Land Co.,* 170 Iowa 540, 544.

*3. MUNICIPAL CORPORATIONS: torts: independent contractor (?) or "employee" (?)*

6. With its answer, defendant town filed a cross-petition against its codefendants, asking that it have judgment against them for the amount of the judgment, if any, which might be rendered in favor of plaintiff, and against defendants Cannon and Franksain. The other defendants moved to strike the cross-

4. APPEAL AND ERROR: reversal: controversy between codefendants.

petition, because it was thought to be premature, and for other reasons. The motion was sustained, but without prejudice to the right of defendant town to maintain a further action to determine the liability of defendant town's codefendants to the town, in case it has to pay damages in this action. From this ruling the town has perfected an appeal, as against its codefendants. It is contended by said appellant that the other defendants are liable to it. They cite *City of Ottumwa v. Parks,* 43 Iowa 119; *Rowell v. Williams,* 29 Iowa 210; *City of Keokuk v. Independent District,* 53 Iowa 352; Code Section 3574. See, also, *City of Des Moines v. Des Moines Water Co.,* 188 Iowa 24, 35. That was a case wherein the city sought reimbursement for damages paid by it because of the negligence of defendant, a licensee. It was held that in such an action it was rather a claim for failure of the licensee to perform its undertaking to save the licensor from liability on account of the former's negligence. It is possible that, where all defendants are guilty of negligence, there might be a question of contribution, rather than of reimbursement; but we do not pass upon that question at this time. There may be such liability, but that question is not now before us. There is, as stated in the *City of Des Moines* case, supra, some conflict in the authorities on this proposition. Some interesting questions might be presented. The question now is whether the question of such liability should have been tried out in this case. That is the contention of the appellant town, as against its codefendants. To have done so would have complicated still further the trial of this case. The only case cited is *City of Sioux City v. Weare,* 59 Iowa 95, 102, cited by appellant town. The authority does not sustain the contention. That was an original action by the city against persons who had obstructed a street, causing personal injury to another, and where a recovery had been had against the city. The point to which this appellant refers was whether, as between the city and the persons obstructing the street, the city was guilty of contributory negligence for failure to remove such obstruction, and whether the city is thus precluded from looking to the obstructors for indemnity. The question of the liability of Cannon and Franksain to the town is not an issue between the plaintiff and any

of the defendants, or a matter in which plaintiff is in any manner concerned. The defendants were all seeking to escape liability to plaintiff. It is contended by plaintiff that this matter is now a moot question, and that the defendants may not inject issues into the case, as between themselves, to plaintiff's prejudice. Conceding, for the purpose of argument, but without deciding, that all these questions could have been threshed out in the main case, still, since we find no error in the record calling for a reversal of plaintiff's judgment, we are not disposed to reverse his judgment so that the whole case will have to be tried over. The rights of the town have been preserved, since the cross-petition was stricken without prejudice. It is suggested by the town that there would be a multiplicity of suits and trials if it is required to commence another action against its codefendants. This would be no more than another trial of this case if the whole case is reversed. If the town pays the judgment, we might, if asked, upon affirmance of plaintiff's judgment, remand the case as between the defendants, and permit additional pleadings as to them, and have the cross-petition reinstated, but without prejudice to the affirmance of plaintiff's judgment.

7. It is thought by appellants that the court erred in permitting the testimony of witnesses Flosame and Cane as to their falling into the ditch. It is perhaps unnecessary to refer further to the evidence on that point, except to say that they described the conditions surrounding the ditch, and what they saw; and it would have been somewhat difficult, perhaps, to have stated

5. MUNICIPAL
CORPORATIONS:
defects in streets:
occurrences
subsequent to
injury.

what they properly testified to, without stating that they fell in. But at any rate, this was about the time plaintiff fell in, if, indeed, it was not before. The proposition is ruled by *Hall v. City of Shenandoah,* 179 Iowa 1192.

We would not be justified in specifically noticing other points. We have carefully gone through the record, and discover no prejudicial error as to defendants other than Franksain. The judgment is *affirmed* as to defendants town of Stratford and Cannon; *reversed* as to defendant Franksain.

WEAVER, STEVENS, and DE GRAFF, JJ., concur.