(No. 6549.   May 9, 1938.)

In the Matter of the Death of LEO B. BLACK.   OLIVE J. BLACK, on Behalf of Herself and Minor Child, DENTON BLACK, Respondent, v. JOHN D. ISAAK, Appellant.

[80 Pac. (2d) 24.]

O. R. Baum and Ben Peterson, for Appellant.

Merrill & Merrill, for Respondent.

GIVENS, J.—Respondent, widow of Leo B. Black, known as and called Lee, filed on behalf of herself and one minor child, a claim before the Industrial Accident Board, against appellant as employer of her husband for his accidental death in falling off a roof of appellant's apartment house, being remodeled by and under the direction and supervision of appellant, where deceased was shingling.

The board awarded respondent, on behalf of herself and minor child, against the appellant, $302.60 as reimbursement for expenses incurred, and compensation for the use and benefit of herself and minor child at the rate of $8.80 a week until said minor child reaches the age of eighteen years on the 21st day of August 1944, or dies or marries, and thereafter compensation for claimant's own use and benefit at the rate of $8 a week until her death or remarriage, but not to exceed a period of four hundred weeks from and after the 12th of August, 1937. The appellant brings the award here for direct review under 1937 Session Laws, chapter 175, on two points. First, "the absence of competent and substantial evidence of the income of the deceased, to establish the award of $8.80," and second, "the absence of competent and sub-

stantial evidence to support the finding that Leo B. Black, the deceased, was an employee and working for 40¢ an hour, and not an independent contractor.''

Appellant asserts as decisive these points of law: (1) That a finding of fact of the Industrial Accident Board is conclusive on appeal to the supreme court only when it is supported by competent, material and relevant evidence; (2) that the supreme court will review the evidence produced before the Industrial Accident Board upon which they made findings, to determine its competency and relevancy to support the findings made by such board, and will be governed by rules applicable to court trial; (3) that the findings of the Industrial Accident Board, if not supported by sufficient competent and substantial evidence, are not binding and conclusive upon the courts; and (4) the burden is on the claimant to establish the relationship of employee and employer before the claimant can recover; all of which may be accepted as correct statements of law.

Section 43-1106 as amended by 1937 Session Laws, chapter 134, page 215, provides death benefits, as far as material herein, as follows:

''In computing death benefits the total weekly compensations shall be subject to a maximum of twelve dollars per week and a minimum of six dollars per week; provided, that in the case of a dependent widow or of more than one dependent child, the minimum shall be eight dollars per week. But if at the time of the injury the employee received wages of less than . . . . the minimum herein fixed, then the compensation shall not exceed the full amount of such wages.''

The award was for the minimum and the analysis and *résumé* of the testimony indicate the showing was sufficient to justify the award. Mrs. Black kept account of her husband's earnings; she put things on a budget; put on a calendar every day what he gave her; she knew what wages he was getting; most generally he gave her the checks; gave her from March until August, 1937, $663.60; saw two checks he received from appellant; worked for various people, naming them, and one of them testified and corroborated her in this; received from one, $8 per day, another $30; he earned

over $200 in October; appellant paying him 40¢ per hour; worked for appellant intermittently.

The testimony tending to show the relation of master and servant rather than independent contractor is as follows: Delome Kohier, witness for respondent, who lived about half a block or less from the house being remodeled, testified he saw three or four men on the roof, so far as he could tell laying tar paper and putting shingles on and he saw deceased on the roof just before he fell, it being respondent's contention that if there were several there putting on shingles it negatived the idea deceased had an independent contract to do all the shingling himself. Ada Sutton, witness for respondent who lived cata-corner from appellant's house, saw deceased on the roof about two hours before the accident laying tar paper and putting shingles on, he was the only one she could see shingling. Mrs. Delome Kohier saw men putting tar paper on the roof and shingling, and on cross-examination, testified she didn't know if the other men were shingling; she imagined the others were doing the same; knew deceased was; didn't know what the others were doing.

Mrs. Black testified as follows concerning a conversation with appellant after the accident: Isaak told her he had no compensation; he had built two other apartment houses and this one hiring men by the day and had had no accidents; he wrote her a check for $8, she protested that deceased had worked four days the week of the accident and Isaak consulted a book and gave her a corrected check for $16 and some cents; that there was nothing said about how many squares deceased had shingled and that Isaak did not count the shingles; she supposed the book was his time book; later Isaak offered $100 in settlement, then $500; she offered to accept $3,500 but this was refused by Isaak; no settlement was made; Mr. Isaak told her if she sued he could say deceased had a contract, or had fainted; the reason deceased worked irregularly at Mr. Isaak's was that Isaak hired by the hour and if he didn't need the men for that hour he would lay them off; deceased worked for Isaak at 40¢ per hour when going wage was $8 per day because Isaak paid 40¢ per hour no matter what the job was; deceased never worked a full

week for Isaak; just worked when Isaak had something for him to do.

Russell Black, son of deceased, testified he asked Isaak if he had compensation; Isaak replied he had none; he did not ask if his father had a contract because he knew he was paid by the hour.

Appellant urges as opposed to the above, the following: Blaine Burroughs, employee of appellant testified he heard deceased ask Isaak if they couldn't get together on the shingling; that deceased wanted to do it for $2 per square; Isaak replied he could not pay that, and that they agreed on $1.80 per square; deceased told witness the only reason he stayed on the job was he thought he might make something on the shingling; deceased was getting paid for the shingling by the square.

There was also testimony that nobody helped shingle; when deceased came on the job he did the carpentering; worked by the hour; was paid 40¢ per hour, all workmen furnished their own tools; appellant was to furnish all shingles and material.

Mr. Isaak testified deceased asked "again and again" for the chance to do the shingling; they agreed on $1.80 per square as pay deceased was to have; deceased went home and returned after noon with rubber soled shoes and shingle hatchet; after accident deceased's son asked about compensation and witness told him he was not to blame; he had no compensation; he could do nothing about it at that time but would do something. Deceased's son asked if his father was working by the hour or on contract; witness told him deceased was on contract; when Mrs. Black came for the check witness counted the shingles remaining in the pile to see how many had been used; found 39 bundles left from pile of 60; that he did not consult a time book; had no time book with him; gave Mrs. Black check for $8 then found deceased had worked two ten-hour days before he started to shingle, he then gave Mrs. Black a check for $16.15; after deceased started to work witness told him to put some railing on the shingles; deceased replied he had rubber soled shoes, was safe, and that witness should "get off and stay off" the roof; he did not tell Mrs. Black she could keep the shingling contract after the acci-

dent, because deceased was dead; he paid no attention to the contract after the accident; did not ask Mrs. Black or anyone to complete it; gave her no choice to do so; he just went ahead and had the shingling done; when Mrs. Black came for the check he looked on the calendar because he put the number of hours each man worked each day on it.

■ ■ The relation of employer and employee shown and well-nigh conceded to have existed immediately prior to the day of the accident will be presumed to continue to exist until the contrary is shown and the relationship changed. (*Pettee v. Noyes,* 133 Minn. 109, 157 N. W. 995, 996; *vide,* the authorities below.) True, this is a rebuttable presumption and slight or strong according to the attendant and surrounding circumstances, but it was legitimate, for the board, and is for this court, to consider such presumption in weighing the evidence *pro* and *con* as to deceased's status at the time he fell from the roof and could be placed in the scales in his behalf as against the contention by appellant that appellant retained no measure of control and the effect of changing from pay per hour or per day to piece work.

■ The rule has been applied conversely, i. e., the relationship of independent contractor once shown to exist is presumed to continue, and the rule should work both ways:

"While the burden was on appellant to show that Salinas was an independent contractor and not its employee, still, when that relationship was once established between the parties it would be presumed to exist until it was shown by appellee that the relationship had ceased to exist and that at the very time she was injured that Salinas was acting in the capacity of an employee or servant of appellant. The facts, we think fail to establish the destruction of one relationship and the creation of another. It would require clear and cogent facts to change a relationship shown to exist and create another totally different from the original relationship. The appellant had destroyed the presumption that, as Salinas worked for appellant, he must be a servant, and the presumption then arose that another and different relationship which had been established remained in full force and effect until the party to be benefited by a change in that relation had proved the change."

(*Winerich Motor Sales Co. v. Ochoa,* (Tex. Civ. App.) 58 S. W. (2d) 193, 194.)

Though not applied as to employer and employee the general principle involved has been heretofore declared by this court in *Isaak v. Journey,* 52 Ida. 392, 399, 15 Pac. (2d) 1069:

"The presumption is that the transaction between appellant and respondent remained the same from its inception, in the absence of modification thereof consented to by both parties. There is no evidence in the record that the transaction was later changed or modified by any act or conduct on the part of respondent from what it was originally. If the original transaction constituted a pledge, as found by the jury, no act on the part of appellant alone, could convert it into an outright assignment."

(*Morris Plan Industrial Bank v. Howell,* 200 N. C. 637, 158 S. E. 203, 205; *Exchange State Bank v. Occident Elevator Co.,* 95 Mont. 78, 24 Pac. (2d) 126, 130, 90 A. L. R. 740; *Healy v. Ginoff,* 69 Mont. 116, 220 Pac. 539; *Laam v. Green,* 106 Or. 311, 211 Pac. 791, 793; *Connolly v. Industrial Acc. Com.,* 173 Cal. 405, 160 Pac. 239; 10 R. C. L. 872, sec. 15, Evidence.)

While the holding in *Connolly v. Industrial Acc. Com., supra,* was adverse to the claim for compensation by the widow for the death of her husband on the ground he was an independent contractor and not an employee, the reasoning and analysis therein supports the rule as applied herein, and is distinguishable as to the conclusion therein, because there the prior work was done at places other than where the accident occurred. Herein it was all on the same premises and the same general job.

The evidence clearly shows that prior to the fatal day at least, Black had been employed by appellant at 40¢ an hour and the only evidence urged by appellant indicative that such relationship did not continue is that Black was to be paid $1.80 per square for shingling and the implication that appellant retained no control over how the work was to be done, because he testified that Black told him, "Now you just get off and stay off" the roof; but as against this the commission had the right to consider appellant's advice to

put up scaffolding. The method of payment is not controlling or sufficient in the absence of anything else to overcome the presumption above noted:

" 'In determining whether the relation is that of master and servant or that of proprietor and independent contractor, the courts have sometimes taken into consideration the manner of payment; whether payment was to be made by the day, week, month, etc., with a reservation of the power to discharge or whether there was to be a payment by the piece or by the entire job. But the mode of payment is not a decisive test by which to determine this question. The test lies in the question whether the contract reserves to the proprietor the power of control over the employee.' " (*Taylor v. Blackwell Lbr. Co.*, 37 Ida. 707, 716, 218 Pac. 356.)

(*Hansen v. Rainbow Min. & Mill. Co.*, 52 Ida. 543, 17 Pac. (2d) 335; *Komula v. General Acc. etc. Corp., Ltd.*, 165 Wis. 520, 162 N. W. 919; *Bodwell v. Webster*, 98 Neb. 664, 154 N. W. 229, Ann. Cas. 1918C, 624.)

The statute is to be construed in favor of the status of employee, 71 C. J. 449:

"In determining whether a workman is an employee or an independent contractor, the act is to be given a liberal construction in his favor, and any doubt is to be resolved in favor of his status as an employee, rather than as an independent contractor; but the rule of liberal construction cannot be extended to the point of bringing an independent contractor within the purview of a compensation act."

The award is therefore affirmed.

Costs awarded to respondent.

Morgan, Ailshie and Budge, JJ., concur.

Holden, C. J., did not participate.