CITY OF DES MOINES, Appellee, v. WALTER B. BARNES, Appellant.

No. 47076.

DECEMBER 16, 1947.

Walter F. Maley, of Des Moines, for appellant.

Fred T. Van Liew, Harvey Bogenrief, and Jay A. Mitchell, all of Des Moines, for appellee.

SMITH, J.—Cornelius Ahern was injured in a fall on an icy sidewalk in plaintiff city. He sued the city alone, alleging, however, that the dangerous condition of the sidewalk where he fell was due to a downspout maintained by W. B. Barnes (defendant herein) upon the adjoining premises. Trial of that case resulted in a judgment against the city, which was affirmed upon appeal to this court. Ahern v. City of Des Moines, 234 Iowa 113, 12 N. W. 2d 296.

After that action was commenced and more than fifteen months before it came to trial the city caused to be served on Walter B. Barnes, defendant herein, a "Notice to Appear and Defend," in strict compliance with section 420.46, Code, 1946 (then section 6735, Code, 1939), which provides:

"Notice to person liable over. In case any action is brought against any such city for damages for injury to person or property claimed to have been caused by or through the negligence of said city, the city may notify in writing any person or corporation, by or in consequence of whose negligence it is claimed by said city the injury occurred or was caused, of the pendency of said suit, the name of the plaintiff and where pending, and the general nature of the claim, and that the city claims that the person or corporation so notified is liable to said city for any judgment obtained against said city, and asking such person or corporation to appear and defend; thereupon any judgment obtained in such suit shall be conclusive in any action by the city against any person or corporation so notified as to the existence of the defect or other cause of the injury or damage, and as to the liability of the city to the plaintiff in the first named

suit in consequence thereof, and as to the amount of the damage or injury occasioned thereby; and every such city is hereby empowered to maintain an action against the person or corporation so notified to recover the amount of any such judgment, together with all the expenses incurred by such city in such suit.''

So far as the record shows, Barnes, after being so served, paid no attention to the matter until the day the trial commenced. His attorney, Walter Maley, who still represents him here, appeared when the case was called and the jury was about to be selected, orally entered his appearance, and asked permission ''to file such pleading as may be necessary to protect the rights and interest of Walter B. Barnes the Cleaner, as tenant or owner, *if and when his rights or interests may appear to be involved or in jeopardy* in the lawsuit now pending.''

It is difficult to summarize the proceedings following this appearance. They cover approximately ten pages of the official transcript of evidence. That transcript, together with the pleadings, instructions, verdict, and judgment entry in the Ahern case, is in evidence and a part of the record here.

Attorney Hanke, who was present representing plaintiff Ahern, asked to have his own appearance entered. Mr. Maley promptly objected, contending that since plaintiff Ahern's attorney who commenced the action was dead no new counsel could appear in his stead without some authority from the probate court. In that connection he reviewed the pleadings and proceedings to date and added:

''May the record now show * * * that the rights and interests of Walter E. Barnes, the Cleaner, or in whatever capacity the said Walter E. Barnes may be involved, if any at all, in this lawsuit, that he have the right and the permission to file such pleading as may be deemed advisable, in view of the fact that he is, may be, called upon to defend in the lawsuit now pending, and if there be no objection * * * may I ask you what would be a proper time to plead the cause.''

He further stated he had just been employed and ''understood the city, on their own behalf, have served a notice of inter-

pleader, or something in the nature of an interpleader * * *."

A colloquy among attorneys and court followed in which Mr. Hanke and the city solicitor expressed the opinion that no pleading would be necessary. Hanke emphasized that he was looking to the city alone and not to Barnes. Thereupon Maley said:

"I think it may be probably said we have reached an understanding between Mr. Hanke, as counsel for the plaintiff, and Barnes the Cleaner, in the event he is involved in the lawsuit in no respect."

Hanke then renewed his request to have his own appearance entered. Maley again objected. Hanke called the plaintiff Ahern to prove that Hanke was in fact his attorney. The examination continued over several pages of transcript, Mr. Maley urging the "dead man statute" and other formal technical objections, all in an apparent effort to establish that a plaintiff whose attorney dies cannot employ new counsel without some authority from the probate court and is in the meantime incompetent to testify even that the deceased attorney had acted as his counsel. It would perhaps be unfair to counsel's intelligence to assume this curious contention was seriously made.

The climax was reached when Hanke asked:

"Mr. Ahern, do I now represent you as your attorney in this case? A. You certainly do. Mr. Maley: Just a minute. That isn't the way to reach this matter * * * I desire to state we cannot proceed in this lawsuit without a proper authority from the probate court of this judicial district. In *lieu* of the fact it is now conceded that James E. O'Brien, who is now deceased, instituted the action and therefore the only proper transfer of his authority must be through the probate court * * *."

There was no ruling. After some colloquy between the court and Mr. Maley the latter pressed for a determination as to the liability of his client in event of judgment against the city, adding: "Of course, if you are now ready to determine * * * that my client * * * isn't liable, I would like to have that made a matter of record, and I will take my departure

with my hat." To this the court replied: "I don't know what the lawsuit is about yet. I don't know whether you are in the case or out of the case." At this point Mr. Maley suggested that the city waive any claim against his client, to which the city solicitor replied: "Oh, no, we won't do that."

Then a dialogue between Hanke and Maley followed, in which Hanke stated that if he got judgment against the city he would waive any claim against Barnes, to which Maley (forgetting his objections to the appearance of Mr. Hanke as attorney for plaintiff) replied: "I think that takes care of the situation as far as I am concerned."

At this point the attorney for the city produced and offered in evidence the "Notice to Appear and Defend," to which Mr. Maley objected that the notice was not timely, did not conform to the statute, and the statutory formalities had not been complied with in its execution: "The Court: I assume that matter will come up later on. Mr. Maley: I simply want to make my record. May I now have a ruling? The Court: Overruled. (Exception.)"

Thereafter the jury was empaneled and Mr. Maley took no further part in the trial so far as the certified transcript of the case shows. There was no objection to or withdrawal of his appearance and no ruling upon his initial request for leave to plead "if and when" his client's "rights or interests may appear to be involved or in jeopardy."

We have set out the record in the Ahern case at considerable length because defendant Barnes in the instant case contends he was not afforded an opportunity in that case "to appear and defend." We deem it important, for reasons hereinafter stated, to know just what *record* he made in that case upon which to base that contention.

On the trial here he attempted, by the oral testimony of both Attorneys Hanke and Maley, to add to the record in the Ahern case which we have just summarized. This testimony was on motion excluded. There was no other evidence for defendant.

The evidence on behalf of plaintiff in the present case, in addition to the files in the Ahern case already mentioned, con-

sisted of the notice to Barnes to appear and defend and the testimony of the assistant city attorney as to conversations and correspondence with Attorney Maley relative to the appeal of the Ahern case to this court. On rebuttal the city solicitor testified to the fact that–after the notice to appear and defend was served on Barnes, Attorney Maley made no arrangement with the city's legal department for the defense of the city, and that his (Maley's) appearance in court when the Ahern case was called for trial was his first connection with the case. The city solicitor also denied the testimony of Hanke and Maley which was later stricken by the court.

At the close of the evidence the trial court directed verdict for plaintiff and entered judgment, from which defendant appeals. It should be mentioned there was a prior appeal (City of Des Moines v. Barnes, 237 Iowa 6, 20 N. W. 2d 895), involving matters of delay in pleading, acquiescence in such delay, and the effect of filing tardy answer where no motion for default on account of lack of answer had been made. That appeal had nothing to do with the merits of the case or with the questions involved here.

Appellant on the present appeal relies upon and argues five propositions: (1) The trial court erred in directing verdict at close of all the evidence; (2) a vouchee in default is not concluded by a judgment against the vouching defendant unless he (the vouchee) is afforded an opportunity to appear and defend, and mere notice with no offer to surrender control of the defense is insufficient, especially where the issues as against voucher and vouchee are not identical; (3) no duty rested on defendant Barnes "to construct, maintain or repair the sidewalk in question," and there was no liability upon him to one injured by reason of any defect therein; (4) imposition of liability herein upon defendant, predicated upon the cited Code section would deny him due process of law and the equal protection of the law under section 1 of the Fourteenth Amendment to the Constitution of the United States; (5) the court erred in striking the testimony of Hanke and Maley.

We shall consider these contentions, so far as necessary to a decision, without following the order of appellant's presentation.

■ I. It seems logical first to examine the position of the city and of Barnes in the Ahern case. The ground or basis of liability of the respective parties in "downspout" and similar cases is not the same. The liability of the city is based upon its statutory duty to keep the streets "open and in repair and free from nuisances." Section 389.12, Code, 1946 (section 5945, Code, 1939). The liability of the property owner in such cases is based on his negligence in creating and maintaining the dangerous condition. 43 C. J., Municipal Corporations, sections 1864, 1865.

○ ■■ Code section 420.46, already quoted, does not *create* the liability of the property owner in cases of this kind. That liability exists at common law. 42 C. J. S., Indemnity, section 22; 25 Am. Jur., Highways, section 392; 27 Am. Jur., Indemnity, sections 18, 19. But the statute does provide a method whereby any judgment rendered against the city will be held conclusive against the property owner as to the matters therein specified. The procedure is at least analogous to the common-law process of voucher whereby an impleaded warrantee brings in his warrantor as the real party and makes him defend the action. 67 C. J., Voucher, 279, 280. As between property owner and the city the liability of the respective parties may be appropriately described as primary and secondary. They are not joint tort-feasors.

. ■ II. The statute (section 420.46, supra) purports to make any judgment rendered against the city, after giving of the notice "to appear and defend," conclusive against the property owner (a) as to the existence of the defect or cause of the claimed injury; (b) as to liability of the city to the injured person; and (c) as to the amount of damage suffered. The notice advises the property owner that the city claims he will be liable for any judgment rendered against it.

The notice in the Ahern case conformed strictly to the statute and was certainly timely. Plaintiff's petition in the Ahern case, as amended, alleged the injury was caused by the ice from the downspout on Barnes' premises. The case was tried squarely upon that theory. There was no allegation or evidence of any negligence of the city except its negligence in permitting

said downspout to be constructed and maintained and the dangerous condition caused thereby to exist. The notice given to defendant herein definitely advised him that the city would look to him to indemnify it in case it was held liable.

In response to the notice Mr. Maley entered appearance for his client when the case was called but filed no pleading of any kind and made no indication of what defense he would make. There was no suggestion then, nor is there any in the present case, that the downspout was not on the Barnes premises or that the alleged liability of the city was not based on Barnes' maintenance of the downspout or that Barnes had any defense that had not been urged by the city in its own behalf. The city, in defending, was in legal effect defending against Barnes' alleged negligence in creating and maintaining the nuisance as well as its own negligence in permitting it to exist. Their interests in the defense were in that respect identical.

There are various ways in which the possible liability of the property owner may be determined in the original action under circumstances such as appear here. The injured party may join as defendants both the city and the one directly causing the dangerous condition (see Spurling v. Incorporated Town of Stratford, 195 Iowa 1002, 191 N. W. 724); or the defendant city, if sued alone, may cause the third party to be brought in as provided by Rule 33(b) (formerly section 11155, Code, 1939); or the third party may intervene, Rule 75, Rules of Civil Procedure (formerly section 11174, Code, 1939).

None of these methods was pursued. Ahern elected to look to the city alone, taking his chance on proving it had actual or constructive notice of the dangerous condition complained of.

The city elected not to interplead Barnes but relied on its notice to him "to appear and defend." But these facts did not relieve Barnes of possible liability after being served with such notice. He still had his right to intervene and become an actual or formal party to the record. Without actual intervention he doubtless had some limited right to participate in the defense. See City of Ottumwa v. Parks, 43 Iowa 119; Hoskins v. Hotel Randolph Co., 203 Iowa 1152, 211 N. W. 423, 65 A. L. R. 1125. But in no case had he the right to assume full control of the defense on behalf of the municipality without its consent, nor

was full control necessary to enable him to defend his own interests. There was at least one issue to be tried to which the property owner was not a party—notice, actual or constructive, to the city of the existence of the downspout. An examination of the record in the Ahern case unmistakably shows that the judgment against the city was based on the finding that Ahern's injury was due to the icy condition created by the Barnes downspout. The vouching-in principle in cases where a third party is liable over in event of judgment against defendant is too well settled to require extensive citation of authority. Hoskins v. Hotel Randolph Co., supra; 42 C. J. S., Indemnity, section 32; 27 Am. Jur., Indemnity, sections 34, 35; Ballou v. Clark, 187 Iowa 496, 498, 499, 171 N. W. 682; 30 Am. Jur., Judgments, section 237 et seq.; 50 C. J. S., Judgments, section 811 et seq. Appellant cites Ballou v. Clark, supra (page 500 of 187 Iowa, page 683 of 171 N. W.) as authority for denying the conclusiveness of the original judgment as against a vouchee. The language he quotes referred to a case where there had been successive contracts of warranty in a chain of title to real estate. The holding there was that the first warrantor is not liable to his warrantee in the same measure of damages as the latter may have incurred upon his warranty to a successive warrantee. The language of that opinion that is in point here is found at the bottom of page 498 and top of page 499 of 187 Iowa, page 683 of 171 N. W.

We must conclude the judgment in Ahern's favor against the city was binding on Barnes, defendant herein, in the particulars enumerated by the statute unless there be merit in some of the other propositions he argues.

III. Appellant earnestly contends he was not permitted to defend. We have set out at some length the record in the Ahern case. It reveals that after his attorney entered appearance on his behalf practically no steps were taken by him to protect appellant's interest on that trial. He devoted considerable time objecting to substitution of an attorney for Ahern upon the utterly ridiculous contention that because the original attorney had died there would have to be some probate authority before Ahern could employ another attorney. That

contention needs no further comment here. It ceased even to interest Mr. Maley after Mr. Hanke agreed not to look to Barnes in event of success in obtaining judgment against the city, a not very important concession on Hanke's part.

But appellant by oral testimony attempted to show in the instant case some additional proceedings not contained in the record of the Ahern case. This additional proceeding, according to the witness Hanke, consisted of a colloquy that took place while the jury was being called. It is to the effect that Mr. Maley inquired of the presiding judge whether his (Maley's) presence was any longer necessary; that the presiding judge referred the matter to the witness Hanke, as attorney for Ahern, and the city solicitor; and that "as I recall it, we made the statement to the court that in our opinion this was a lawsuit between Ahern and the City of Des Moines, and as I recall it then Mr. Maley walked out of the courtroom" and took no further part.

Witness Maley's testimony goes further to the extent of claiming that the city solicitor said:

"That as far as he was concerned, I could attend the trial * * * but that I would not be permitted to either examine the jury for cause or to make an opening statement to the jury after they were selected."

Maley further testified that he then appealed to Judge Meyer, who told him "that in view of the statements and position of Mr. Hanke and Mr. Van Liew it appeared that my presence as counsel for Barnes in that lawsuit was neither necessary nor proper, and that the issues were clearly between Cornelius Ahern, plaintiff, and the City of Des Moines." This, presumably, constitutes the basis of the present claim that defendant Barnes was denied opportunity to defend.

This testimony of Attorneys Hanke and Maley was stricken out on motion and properly so. Attorney Maley entered his appearance for Barnes for the avowed purpose of making a *record* for the protection of his client. His client, to that extent at least, became a party to the record. He was allowed every opportunity to make such record as he saw fit. He was not pre-

vented, under his own attorney's testimony, from making of record the very matter he testified to. Nor was he, even under his attorney's own testimony, assuming it to be admissible, precluded from remaining in the case to make any further record desired.

 It is horn-book law that parol or extrinsic evidence is inadmissible to contradict, impeach, vary or explain judicial records. 32 C. J. S., Evidence, section 865; Bryer v. American Surety Co., 285 Mass. 336, 189 N. E. 109.

If the colloquy testified to by these witnesses was intended by Mr. Maley to be a part of the record of the proceedings he should have made it of record in an orderly way and should not have allowed it to rest in parol. Even conceding that it took place as a part of the proceeding, Barnes was still vitally interested in the result of that action and no opinion of the attorneys for the nominal parties or of the presiding judge could have prevented him from making it of record. ·

 We are constrained to hold there was no competent evidence upon which to base a verdict or finding that defendant-appellant was deprived of his right to appear and defend. The record, even if the incompetent evidence be considered, reveals no *ruling* denying him that right and no fraud or force that prevented him from exercising it. By his own admission (made at the time) his attorney was unprepared to take part in the trial, though in oral argument on this appeal he assured us he was. The attorney had not conferred with the city attorneys, though he revealed a considerable knowledge of the state of the pleadings. He tendered no pleading and revealed no theory of any possible separate defense.

IV. Appellant argues that there was some confusion in the court's instructions in the Ahern case. One instruction was possibly more appropriate, standing alone, to an action in which liability of the city was predicated upon negligence in allowing the natural snow and ice to become rough, jagged, and uneven by freezing and thawing or by being trampled upon by pedestrians. Another, however, explained that there must be a finding that the condition was due to the flow of water from the downspout "as distinguished from a natural accumulation of ice solely from natural causes."

Read together we do not believe the two instructions could have misled the jury. The only possible prejudice was to plaintiff Ahern, who was required to prove more than was necessary to recover. There is no possibility that the jury's verdict was based on any icy condition except that caused by the freezing of the water from the downspout.

V. It is not necessary to discuss the contention that application of the statute (section 420.46, supra) to the facts of the instant case would render it unconstitutional as depriving appellant of due process of law and equal protection of the law. We have already held that the record in the Ahern case fails to show he was denied opportunity to appear and defend.

Nor is it necessary to consider the authorities cited to the proposition that the adjacent property owner is not liable for injuries caused by defects in a sidewalk. The liability here is predicated upon the proposition that appellant's downspout caused the injury complained of. That issue was squarely raised in the Ahern case and decided by the jury adversely to the city and to Barnes.

The conclusion is inevitable that there was no issue to submit to the jury and the trial court properly so held. As we find no error, the case is affirmed.—Affirmed.

OLIVER, C. J., and BLISS, HALE, GARFIELD, MANTZ, MULRONEY, and HAYS, JJ., concur.