CHIGAGO GREAT WESTERN RAIL-
WAY COMPANY, Plaintiff,

v.

FARMERS PRODUCE COMPANY, El-
mer Wilharm and Emaline Wilharm, a
co-partnership doing business as Farm-
ers Produce Company, Elmer Wilharm
and Emaline Wilharm, Individually, De-
fendants.

Civ. No. 783.

United States District Court
N. D. Iowa, E. D.

Aug. 19, 1958.

Hubert C. Jones, John N. Hughes and Eugene Davis, of Evans, Duncan, Jones, Hughes & Riley, Des Moines, Iowa, for plaintiff.

Oliver J. Reeve, Waverly, Iowa, for defendants.

GRAVEN, District Judge.

In this action the plaintiff seeks to recover from the defendants under an indemnity provision in a contract. The plaintiff is a railway corporation organized under the laws of the State of Delaware. The defendants Elmer Wilharm and Emaline Wilharm, as co-partners, have since about 1940 been engaged in business in the Town of Tripoli, Bremer County, Iowa, under the trade name of Farmers Produce Company. They are citizens of the State of Iowa. The amount in controversy, exclusive of interest and costs, is in excess of $3,000. The plaintiff will be hereinafter referred to as the Railway Company and the defendants as the Produce Company.

The main line of the Railway Company runs east and west through the Town of Tripoli. In 1942 the Railway Company leased to the Produce Company a tract of land owned by it in that Town. Thereafter the Produce Company carried on business operations in buildings situated on the leasehold. Those buildings are situated on the north side of the Railway Company's tracks. A spur track provided for the use of the Produce Company branches off from the main tracks and leads to and is adjacent to the Produce Company buildings.

Eggs constituted the greater part of the products handled by the Produce Company. Over the years following the making of the lease the Produce Company made increasing use of motor truck transportation in connection with the eggs handled by it. The doors and other facilities for the loading and unloading of the products handled by the Produce Company were located on the south side of its main building and faced the spur track. The Produce Company desired to have the trucks hauling the products handled by it load and unload from the doors and adjoining platform on the south side of that building. In order to do this the trucks would have to cross the main track and the spur track and a private crossing over those two tracks would be needed. On October 1, 1952, the Railway Company and the Produce Company entered into a written agreement. That agreement provides in part as follows:

"Whereas, Licensee is lessee of a parcel of land held of the Railway Company under lease No. 7900 dated October 17, 1942, Tripoli, Iowa, and for the more convenient access thereto Licensee wishes the Railway Company to construct a private crossing over each of its two tracks

on its right of way adjoining said leasehold; and

"Whereas, the Railway Company is willing to construct said crossing upon the terms and conditions hereinafter mentioned, which terms and conditions are satisfactory to Licensee.

"Now, Therefore, in consideration of the premises and of the covenants and agreements of the parties hereto, it is covenanted and agreed as follows:

"1. The Railway Company agrees that a private crossing may be established across its two tracks on its right of way at the location shown * * *.

"2. Licensee agrees at his own expense to do the necessary grading for said crossing; to install, if requested at any time so to do by the Railway Company, drainage facilities on both sides of the track or tracks and between tracks at said crossing and thereafter to maintain and keep said drainage free and clear of debris and to maintain and keep said crossing in good and sufficient condition satisfactory to the Railway Company.

"3. The Railway Company agrees that after the necessary grading has been done it will install planking or other suitable material or both from the end of its ties in each track at said crossing and will erect appropriate signs at said crossing as required; and Licensee agrees to pay the Railway Company the actual cost of the labor and materials used in doing such work within twenty (20) days after rendition of a bill therefor.

"4. Licensee agrees that said crossing shall be used exclusively by him, his employes, licensees and invitees as a private crossing and that said crossing shall under no circumstances be used as a public crossing.

"5. Licensee agrees that the Railway Company shall not be required to give a warning of any kind or character of the approach of locomotives, cars or trains or other equipment to said crossing or to reduce the speed thereof because of said crossing; and Licensee agrees that the Railway Company may operate its railroad in all respects as if no crossing existed at said place.

"6. Licensee agrees for and on behalf of himself and all persons who may use said crossing under the license herein granted to Licensee that the Railway Company, its successors and assigns, shall not be liable for injury to or death of any person whomsoever who shall enter upon or use said crossing, or for loss of or damage to property in the possession, custody or control of any such person while on said crossing. Licensee further agrees to protect, indemnify and save harmless the Railway Company, its successors and assigns, from and against any and all liability, loss, cost, damage, expense and claims of every kind and character due to injury to or death of any person whomsoever or loss of or damage to any property whatsoever, arising directly or indirectly out of or incident to the existence, use, maintenance or condition of said crossing, and regardless of negligence."

In November 1952 private crossings were constructed across the main line and the spur track. The private crossing across the spur track leading to the building, referred to by the parties as a walkthon, was constructed by employees of the Produce Company. They used railway ties furnished by the Railway Company in its construction. Trucks hauling eggs for the Produce Company used the crossing to back up to a door in the building known as No. 1 door. While the greater part of the eggs handled by the Produce Company were transported by truck, yet some were shipped by express and some as railway freight. Crates of eggs shipped by express would sometimes be taken from the No. 1 door and carried across the tracks to the depot

a short distance away. When eggs were shipped as railway freight they were generally shipped in less than carload lots and would be loaded into what is referred to as the merchandise car of the way freight. In the case of such shipments the trainmen would spot the merchandise car on the main track opposite the No. 1 door and carry the crates of eggs from the No. 1 door and place them in the merchandise car. In doing so they would make use of the private crossing or walkthon across the spur track.

On June 17, 1953, Guy P. Smith, a brakeman in the employ of the Railway Company, was a member of the crew of a way freight operating in and out of Tripoli. It was part of his duties to assist in the loading and unloading of freight. On that day after the way freight arrived at Tripoli he received instructions from his foreman to load crates of eggs being shipped by the Produce Company into the merchandise car. That car was next spotted on the main track opposite from and approximately fifteen feet away from the No. 1 door. The crates of eggs to be loaded were on a platform in the vicinity of that door. Smith took a crate of eggs from the platform and started to carry it across the private crossing or walkthon. He claimed that while so doing he fell and received serious injuries. On June 10, 1954, Smith brought an action against the Railway Company in the United States District Court for the District of Minnesota under the provisions of the Federal Employers' Liability Act to recover for the injuries claimed to have been received by him as a result of his fall. The Produce Company was not made a party to that action. On August 12, 1954, the Railway Company notified the Produce Company of the action brought by Smith and tendered that Company the defense of the action. On October 2, 1954, the Produce Company denied liability in the matter and refused the tender of the defense of the action. The Railway Company then defended the action.

The allegations of negligence made by Smith in his complaint in his action were:

"(A) That the Defendant negligently failed to provide and maintain for Plaintiff a reasonably safe place to work.

"(B) That the Defendant negligently failed to provide and maintain for plaintiff a reasonably safe, sufficient and proper walkway.

"(C) That the Defendant negligently failed to make a timely and adequate inspection of its said walkway and its appurtenances.

"(D) That the Defendant negligently failed to give Plaintiff timely and adequate warning of the insufficient, defective, dangerous, and hazardous condition of its said walkway and its appurtenances.

"(E) That the Defendant negligently failed to make necessary repairs to said walkway after it knew, or in the exercise of reasonable diligence should have known, of its insufficient, defective, dangerous, and hazardous condition.

"(F) That the Defendant negligently allowed its said walkway to become and remain defective and in a bad state of repair when it knew, or in the exercise of reasonable diligence should have known, that Plaintiff would be required to be on and about, and use said walkway, and would thereby be subjected to the dangers and perils then and there existing by reason of said defective walkway."

At the trial Smith testified in substance that after he took up the crate of eggs he took a couple of steps forward on the private crossing and then one of the ties rolled and crumbled under him; that it was an old chewed up tie; that some of the ties were rotten and there were gaps of three or four inches between them. The Court in its instructions submitted to the jury the question of whether the Railway Company was guilty of negligence in connection with

the private crossing; the question as to whether such negligence was a proximate cause of his injuries, and the question as to the amount of his damages. The jury returned a verdict in favor of Smith in the sum of $20,000. The Railway Company appealed from the judgment rendered against it on the verdict. On appeal the judgment was affirmed. Chicago Great Western Railway Co. v. Smith, 8 Cir., 1955, 228 F.2d 180. On December 30, 1955, following that affirmance, the Railway Company made demand upon the Produce Company for the payment of the judgment and interest thereon and for the cost and expense of the litigation. The Produce Company refused such demand. On February 26, 1956, the Railway Company paid the principal of the judgment plus interest thereon in the sum of $1,050.

On July 26, 1956, the Railway Company commenced this action against the Produce Company. It seeks to recover the amount of the judgment and interest together with cost and expense of litigation in the claimed sum of $6,692.76. The Produce Company made timely request for a jury trial. The parties by pretrial motions based largely on the pleadings sought to have the Court determine disputed legal questions connected with the indemnity agreement contained in the license agreement heretofore set out. The Court was of the view that it should have a more adequate record in order to pass upon those questions. In order to provide such a record a hearing was had at which the parties submitted all of the documentary evidence that they considered pertinent to a determination of those questions and made stipulations as to the matters deemed pertinent by one or the other of the parties.

In the present case jurisdiction is based upon diversity of citizenship. The indemnity agreement was made in Iowa in connection with the leasing of Iowa real estate. It is clear that the law of Iowa is applicable.

The parties are not in agreement as to the effect to be given in this case to the judgment in the Smith case. It is well settled in Iowa that where a third party may be liable over in the event of a judgment against a defendant such third party may be vouched in by such defendant. City of Des Moines v. Barnes, 1947, 238 Iowa 1192, 1201, 30 N.W.2d 170, 174. Under modern practice such a party is vouched in by being notified of the pendency of the suit and requested to assume the defense of it. State Bank of New Prague v. American Surety Co., 1939, 206 Minn. 137, 288 N.W. 7, 11. Where one who has the right to recover over is sued, the judgment rendered against him is conclusive on the indemnitor providing he has been vouched in. B. Roth Tool Co. v. New Amsterdam Casualty Co., 8 Cir., 1908, 161 F. 709. See, also, Hoskins v. Hotel Randolph Co., 1926, 203 Iowa 1152, 211 N.W. 423, 65 A.L.R. 1125, and City of Des Moines v. Barnes, supra. See, also, St. Joseph & G. I. Ry. Co. v. Des Moines Union Ry. Co., 1917, 180 Iowa 1292, 162 N.W. 812; International Indemnity Co. v. Steil, 8 Cir., 1929, 30 F.2d 654, and Aluminum Co. of America v. Hully, 8 Cir., 1952, 200 F.2d 257. The conclusiveness of the judgment is coextensive with the questions determined in the case in which it was rendered and to ascertain what questions were determined recourse may be had not only to the pleadings, instructions, verdict, and judgment therein, B. Roth Tool Co. v. New Amsterdam Casualty Co., supra, but also to the entire record including the testimony. Washington Gaslight Co. v. District of Columbia, 1896, 161 U.S. 316, 329, 16 S.Ct. 564, 40 L.Ed. 712.

Although the Produce Company was not a party of record to the Smith case, the judgment rendered against the Railway Company in that case is conclusive as to the Produce Company as to certain matters. It is, of course, conclusive as to the Railway Company as to the same matters. That judgment is conclusive as to both parties as to the

following matters: (1) that the Railway Company was guilty of negligence in connection with the private crossing, (2) that such negligence was a proximate cause of Smith's injuries, and (3) the amount of damages sustained by him. Those matters are not subject to being controverted by either party. There conclusively inheres in them the determination that the liability which was imposed on the Railway Company arose out of or was incident to the existence, use, maintenance and condition of the private crossing. The judgment in the Smith case did not encompass the question as to whether the Produce Company was guilty of any negligence in connection with the walkthon which may have concurred with the negligence of the Railway Company. That judgment did not, of course, include the question as to the reasonableness of amount claimed by the Railway Company for the cost and expense of the litigation. That question is still open and is not subject to being adjudicated at this time.

The Produce Company argues that it was not guilty of any negligence in connection with the walkthon which was a proximate cause of Smith's injuries and that, therefore, the Railway Company is seeking to be indemnified against the consequences of its own negligence and that it may not legally be so indemnified. The position of the Railway Company is that the question of whether the Produce Company was or was not guilty of any concurring negligence in connection with the walkthon is not pertinent for the reason that the indemnity agreement does indemnify it against the consequences of its own negligence in connection with the walkthon and this even though such negligence was the sole proximate cause of the injuries for which recovery was had against it and that it may legally be so indemnified.

For the purposes of the hearing, it must be and it will be assumed that the situation is that the Railway Company is seeking to be indemnified against the consequences of its own negligence in connection with the walkthon and that the Produce Company was not guilty of any negligence in connection therewith.

In order to bring in to sharper focus the theory upon which the Railway Company is seeking recovery, reference will be made to rules of law which are frequently pertinent in similar or somewhat similar situations. Under the Iowa law a party situated somewhat similar to the Railway Company in this case might seek recovery from a third party on several different theories. It might seek indemnity or it might seek contribution. Contribution is a sharing of the loss. Indemnity is the shifting of the loss. George's Radio v. Capital Transit Co., 1942, 75 U.S.App.D.C. 187, 126 F.2d 219. Under the Iowa common law contribution may be had by one negligent tortfeasor from another negligent tortfeasor. Best v. Yerkes, 1956, 247 Iowa 800, 77 N.W.2d 23. See Comment, 42 Iowa Law Review 450 (1957). Under the Iowa common law indemnity may be had by one negligent tortfeasor from another negligent tortfeasor. Weidert v. Monahan Post Legionnaire Club, 1952, 243 Iowa 643, 51 N.W.2d 400; Rozmajzl v. Northland Greyhound Lines, 1951, 242 Iowa 1135, 49 N.W.2d 501. The license agreement heretofore set out contained a provision requiring the Produce Company to maintain and keep the private crossing in good and sufficient condition satisfactory to the Railway Company. The Railway Company might have sought recovery against the Produce Company on the theory that the Produce Company had breached that provision.

In the present case the Railway Company is relying upon contractual indemnity. Such reliance does not preclude it from also relying upon common law indemnity. O'Dowd v. American Surety Co., 1957, 3 N.Y.2d 347, 165 N.Y.S.2d 458, 144 N.E.2d 359, 361. However, in the present case the Railway Company relies upon the indemnity provision contained in the contract. It does not rely upon common law indemnity, common law contribution, or breach of the contract provision in the license agreement

requiring the Produce Company to maintain and keep the private crossing in good and sufficient condition satisfactory to the Railway Company. It was stipulated that the Railway Company at no time notified the Produce Company that the latter was not maintaining and keeping the private crossing in a condition satisfactory to the former. However, since the Railway Company does not seek to recover for such breach, that stipulation is not germane. Since the Railway Company is not seeking either common law contribution or common law indemnity, the matter of the relative delinquencies of the Produce Company and the Railway Company and the character of the negligence of the Railway Company and of the Produce Company, if any, is not germane. In the recent case of Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 1958, 355 U.S. 563, at page 569, 78 S.Ct. 438, at page 442, 2 L.Ed.2d 491, the United States Supreme Court states:

> " * * * in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate."

█ It is the well settled Iowa law that, subject to certain exceptions, contracts relieving one from the consequences of his own negligence are valid. See cases cited by this Court in the case of Fire Association of Philadelphia v. Allis Chalmers Mfg. Co., D.C.1955, 129 F.Supp. 335, 350, 351, 352. In the recent case of Weik v. Ace Rents, Iowa 1958, 87 N.W.2d 314, the plaintiff contended that contracts exempting parties from liability for their own negligence are against public policy. In regard to that contention the Court stated (at page 317):

> "Subject to certain exceptions, based upon the public interest, statutory prohibitions, etc., not here present, the rule to the contrary is well settled."

One of the exceptions to the rule just stated is where one of the parties is charged with a public service and the bargain relates to negligence in the performance of any part of its duty to the public for which it has received or had been promised compensation. Restatement, Contracts § 575(1) (b). In the present case the Railway Company is a common carrier. However, in connection with the contract here involved it was not acting in its capacity of a common carrier; it was acting in its capacity as a property owner. See Griswold v. Illinois Central Ry. Co., 1894, 90 Iowa 265, 57 N.W. 843; Chicago & N. W. Ry. Co. v. Kramme, 1953, 244 Iowa 944, 59 N.W.2d 204; Sante Fe, Prescott & Phoenix Ry. Co. v. Grant Brothers Construction Co., 1913, 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787. In the case of Chicago & N. W. Ry. Co. v. Kramme, supra, the plaintiff railroad had granted a license to the defendant contractors to build a private crossing across its tracks. There was included in the license a provision that the contractors assumed and agreed to pay for all injuries arising from the existence of the crossing. The Iowa Supreme Court had this to say in regard to that provision in the license (at page 208 of 59 N.W.2d):

> "Defendants desired to use property belonging to plaintiff in the performance of their contract with the government. Plaintiff was not compelled to grant defendants a license to construct and use this crossing. So far as shown, it was not paid for doing so. Plaintiff was entitled to impose such conditions as it chose upon granting permission to use its property."

█ In the present case the Produce Company did not desire the private crossing in order to ship its product by rail. The Produce Company desired the crossing so as to more conveniently transport the products handled by it by truck. The Railway Company was not under any obligation to grant the Produce Company a license to construct and use the private crossing. The Railway Company was free to impose any lawful conditions

that it desired into the license agreement. Under the Iowa law it was lawful for the Railway Company to include in the license agreement a provision which would require the licensee to indemnify the Railway Company as to claims arising against it because of its negligence in connection with the private crossing. For an extensive annotation on the subject of the validity of a provision of a contract with a railroad for exemption for liability or indemnification for the consequences of the railroad's own negligence other than in the capacity of a common carrier, see 175 A.L.R. 94. For an extensive annotation on the subject of construction and effect of a liability exemption or indemnity clause in a spur track agreement, see 20 A.L.R.2d 711. As noted in the above references, a contract provision may provide for the exemption of one of the parties from liability for negligence as to the other party to the contract or it may provide for the indemnification of one of the parties by the other as to claims of third parties arising because of the negligence of the former. The Courts, including the Iowa Supreme Court, frequently refer to both types as being contracts relieving a party from the consequences of his own negligence and apply the same rules to both. In the present case the provision in question provides for indemnity.

In the recent case of Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695, a railway company sought indemnity against a lumber company. The railway company had constructed an industrial track for the use of the lumber company. The agreement providing for the construction of that track contained a paragraph providing for indemnity to the railway company. A brakeman employed by the railway company sustained injuries while moving a train over the track. He recovered for his injuries from the railway company and the railway company sought indemnification from the lumber company therefor. The Court in its opinion referred to the paragraph providing for the claimed indemnity. It then stated (at page 907 of 183 F.2d):

"Basic in any determination of the meaning of this whole paragraph is an understanding that when the parties contemplated that there might be claims for indemnity they must have been cognizant of the fact that in the ordinary case the occasion for seeking indemnity would not arise unless the indemnitee had himself been found guilty of some fault, for otherwise no judgment could have been recovered from him. That this is typically true is recognized in the comment under Section 95, Restatement on Restitution, as follows: 'In all of these situations the payor is not barred by the fact that he was negligent in failing to discover or to remedy the defect as a result of which the harm was occasioned; in most of the cases it is because of this failure that he is liable * * *'

" 'The fact that the payor knew of the existence of the dangerous condition is not of itself sufficient to bar him from restitution. In many cases it is only because he had knowledge of the condition that he is liable to the person harmed.' "

It is the claim of the Produce Company that even though it be held that a railway company might lawfully include in a private crossing license a provision requiring the licensee to indemnify the licensor from claims arising solely from the negligence of the licensor in connection with the crossing, yet the language used in the license agreement involved in the present case does not bring such claims within the scope of the agreement. It appears that the Railway Company drafted the license agreement.

The Produce Company asserts that since the Railway Company prepared the license agreement its provisions should be construed most strongly against it. The Produce Company further asserts that contract provisions relieving a party

from the consequences of his own negligence are to be strictly construed against him. The Iowa Supreme Court recognizes the general rule that ordinarily a contract is to be most strongly construed against the party who prepared it. Sears, Roebuck & Co. v. Poling, 1957, 248 Iowa 582, 81 N.W.2d 462. See, also, Sinclair & Co. v. National Surety Co., 1906, 132 Iowa 549, 107 N.W. 184, and In re Estate of Murdoch, 1947, 238 Iowa 898, 29 N.W.2d 177. The Iowa Supreme Court also recognizes the rule that contract provisions which parties claim relieve them from the consequences of their own negligence are to be strictly construed against them. Sears, Roebuck & Co. v. Poling, supra.

The decision of the Iowa Supreme Court in the case of Sears, Roebuck & Co. v. Poling, supra, was followed by its decision in the case of Weik v. Ace Rents, 1958, 87 N.W.2d 314. In that case the plaintiff rented a power lawn mower from the defendant. The written rental agreement contained an exoneration and indemnity provision. The plaintiff sustained injuries in operating the mower. He sought to recover from the defendant for breach of oral warranty and negligence. The Court held the oral warranty was unavailable to him because of the parole evidence rule. The defendant claimed that the provision in the rental agreement referred to relieved it from the consequences of its own negligence. The plaintiff claimed that it did not. The Court held that it did. In that connection the Court stated (at page 317 of 87 N.W.2d):

"Plaintiff relies upon statements in Sears, Roebuck & Co. v. Poling, 248 Iowa 582, 81 N.W.2d 462, 465, supra:

" 'In most cases contract provisions that are subject to construction, which a party claims relieve him from liability for his own negligence, particularly active negligence, are strictly construed against him. * * *

" 'It is also elementary that an instrument which is subject to construction is construed most strongly against the party who prepared it— * * *.'

"The foregoing statements are correct. However, they are expressly limited to instruments and contract provisions which are subject to construction. The text in 17 C. J.S. Contracts § 294, p. 683, states: 'A court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language * * *.' Here the intention of the parties is expressed in language so clear and unambiguous that the contract is not properly subject to construction."

The contract provision involved in which the plaintiff was referred to as "I" and the defendant as the "company" provided as follows:

"I * * * do hereby exonerate, indemnify and save harmless the company from all claims and liabilities to all parties for damage or loss to any person, persons or property in any way arising out of or during the use of said equipment."

It is to be noted that the provision in that case which was held to relieve the defendant from the consequences of its own negligence did not contain the word "negligence" at all. In the case of Fire Association of Philadelphia v. Allis Chalmers Mfg. Co., D.C.N.D.Iowa 1955, 129 F.Supp. 335, at page 355, this Court summarized the Iowa law as follows:

"It seems clear that it is not necessary that the parties make use of the word 'negligence' in a provision in order to make the provision applicable to a party's own negligence and that it is sufficient if the parties by 'apt language' include such negligence."

Therefore, the question is presented as to whether the provision in question in the present case is so clear and unambiguous and the language so apt that the rules of construction referred to need not be resorted to.

It would seem desirable to restate the pertinent portion of the provision in question:

"Licensee further agrees to protect, indemnify and save harmless the Railway Company, its successors and assigns, from and against any and all liability, loss, cost, damage, expense and claims of every kind and character due to injury to or death of any person whomsoever or loss of or damage to any property whatsoever, arising directly or indirectly out of or incident to the existence, use, maintenance or condition of said crossing, and regardless of negligence."

The provision relates to injury of "any person whomsoever." Such language would clearly encompass an employee of the Railway Company. The provision uses the word "liability." In McElfresh v. Kirkendall, 1873, 36 Iowa 224, at page 226, the Iowa Supreme Court stated:

"Liability is responsibility; the state of one who is bound in law and justice, to do something which may be enforced by action."

The responsibility of the Railway Company to Smith under the Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.] gave rise to its liability to him. The provision provides for indemnification for liability incurred by the Railway Company which arises "directly or indirectly out of or incident to the existence, use, maintenance or condition of said crossing." The judgment in the Smith case is conclusive that the liability incurred by the Railway Company to Smith arose out of the "existence, use, maintenance or condition" of the private crossing which was the subject matter of the license agreement.

In the case of W. F. Dollen & Sons v. Carl R. Miller Tractor Co., 1932, 214 Iowa 774, 241 N.W. 307, at page 308, the Iowa Supreme Court in discussing a warranty limiting provision stated:

"The statement * * * is direct and unambiguous. It quite exhausts the capacity of the English language in that direction."

In the present case the provision in question would seem also to "quite exhaust the capacity of the English language" so far as the duty of the Produce Company to indemnify the Railway Company in connection with any liability imposed upon it by reason of the existence, use, maintenance or condition of the private crossing.

The Courts have always held that it is not within their province to write or rewrite the provisions of a contract and that the parties are free to make their own contractual arrangements. They have also always held that the provisions of a validly consummated contract will be enforced according to its terms. Under the Iowa law the agreement in question was valid and properly consummated. Under the Iowa law the plaintiff is entitled to have its provisions enforced in accord with its clear and unambiguous terms. Under its clear and unambiguous terms the produce Company was and is under the duty to indemnify the Railway Company for the liability imposed upon it by the Smith judgment. Under its clear and unambiguous terms, the Produce Company was and is under the duty to indemnify the Railway Company for the cost and expense occasioned to it by the Smith litigation. The question as to whether the amount claimed by the Railway Company, as and for the cost and expense of that litigation, is fair and reasonable is not involved in this hearing.

It is the ruling of the Court that under the Iowa law the Produce Company is under the duty of indemnifying the Railway Company for the judgment and interest on the judgment paid by it in the Smith case and for the fair and reasonable cost and expense of that litigation.

It is ordered that such ruling be incorporated in the final judgment entered in this case.